The court sits to hear one case this morning. This is document number 22-1648, Constantine v. McDonough. Mr. Chris Attig, I don't have a notation for, oh, you're reserving five minutes of your time for rebuttal, is that correct? Yes, your honor. Then we'll hear from the government. Okay, we will proceed. May I please report? Before proceeding, I wanted to thank the court for allowing me to appear virtually, and also to thank the court for rescheduling due to the medical situation last month. I'm incredibly grateful for the court's grace in that scenario. In regards to the case, the NIMA consent decree either means what it says in plain English, or it means something else. Those are the only two options. If it means what it says, as we've argued, that the NIMA consent decree, the class certified underneath that consent decree, covers all veterans exposed to dioxin, regardless of the site of their exposure, then issue preclusion prevents the VA from disputing the scope of that NIMA class. Are you arguing that there's no question whatsoever that Vietnam veterans fall within the scope of the NIMA decree? In terms of Vietnam veterans, your honor, I don't think that there is any dispute that Vietnam in the Republic or in the offshores or inland waterways are covered. In terms of Korean War, at this point, our argument is that there is no dispute that they are covered because the court in California, NIMA 3, 4, and 5, has found that the consent decree applies when the Agent Orange Act applies. In 2019, the Agent Orange Act was amended to include Korean DMZ veterans exposed to Agent Orange or dioxin on the DMZ. If that's the case, then the regulation that the Veterans Administration has that addresses this particular issue, that defines the class, that's incorrect. Your argument that regulation is invalid or illegal? We don't argue that in this appeal, your honor, but Mr. Constantine does maintain that it's a very limited regulation. When it was issued in 2003, it only applied to a limited subset of the NIMA class, and I think Mr. Constantine or other appellants might have an avenue to challenge that under the APA, although we have not pled back here. We have focused specifically on the idea of issue preclusion that precludes the VA because, quite frankly, this issue has been resolved within... But if that's the case, wouldn't it be your argument that the regulation is contrary to your understanding of the scope of the NIMA decree? And you do argue that. You argued that before the administration. Yes, we did argue that before the administration, and I believe that we discussed that with the Veterans Court in our briefs and in oral argument before the Veterans Court. When the court decided... But you're not making that argument before this court. Not in this particular appeal, your honor. So that, in your view, that question is still correct? What is our jurisdiction? If you have not appealed that decision of the Veterans Administration supporting its own regulation, and you have not appealed that, then what's left? What are you standing on? Standing on the board's failure to consider the scope of the actual decree itself. Regardless of the regulation, the decree is standing law. And so to the extent that it only applies to a subset of the decree doesn't alleviate the board from following the law, and it failed to do so in this case. The Veterans Court did not acknowledge that or did not address that. Instead, deciding to invent a doctrine, a federal abstention doctrine, that does not seem to have any basis. It seems like they might have actually called it the intersecting jurisdiction doctrine, which is new. We believe that the court's jurisdiction rests on the board's failure to follow the law, and the Veterans Court's failure to require the board to follow that law in time. Failure to follow which law? What law are you referring to? And the issues litigated in terms of the scope of class before a district court. So the way that I've been thinking about this is as follows. You make two arguments in your brief. One is issue preclusion. Namely, that the question of coverage by the consent decree of Korean DMZ veterans has been decided in the other case, and that's issue preclusive. And that the Veterans Court, in the course of talking about what maybe is called abstention or not, I don't think the label matters, said, we disagree with that. And you want to, I don't think it's disputed by the government that the Veterans Court did, in fact, disagree with that. And you want us to say the Veterans Court was wrong. And then the second argument is that if we disagree with you and don't think that issue preclusion applies, there was one more mistake. There was still one mistake that the Veterans Court made, which was to dismiss the appeal from the board rather than stay it. Do I understand the points that you're making correctly, as I just summarized? That is a correct summary, Your Honor. We do. That's the position we maintain, that if the court was to decide that issue preclusion lies, it would not need to reach the question of the scope of the remedy or the Veterans Court's error in the remedy. But as you correctly stated our position, Your Honor, is that even if the court disagrees with us, that issue preclusion does not lie. If the court were to disagree with us, then that error does exist. The error being the use of this quote-unquote abstention doctrine to force an elderly veteran to go into the Northern District of California. But that, I think, is a different point. You told the Veterans Court in no uncertain terms that if there's no – nobody used the language of issue preclusion below, as far as I can tell. You made exactly the same point, namely, it was decided, the coverage beyond Vietnam servers was decided in NDCal, and that is binding. So I'm not sure the label matters. I think you get to say, yes, make that argument. But then you specifically told the Veterans Court, if we're wrong about that, it is not the Veterans Court's job to go and figure out the proper scope of the consent agreement. You've got to go to NDCal for that. I think you said that expressly several times in your reply brief, right? So the only question, I think, putting aside what you're now calling issue preclusion is, should the Veterans Court have stayed the appeal or dismissed it as it did? And one question that I have is, I want to understand more than I do right now, what is the practical difference between those two bottom line remedies? The government, I think, said in its red brief here – I'm not 100 percent sure – that there's no practical difference at all, which is to say, if you go to NDCal and you prevail on your argument in NDCal that the consent decree really does cover Mr. Constantine, even though he was not in Vietnam, then you would, coming back to VA, get all of the money you would get if this appeal remained alive sitting in the Veterans Court. And I want to know if that's right or not. Can you? I think the primary distinction, Your Honor, in terms of stay versus dismissal, I'm understanding the gesture of the question, is that if this court, if the Veterans Court, by dismissing this appeal of Mr. Constantine's, if Mr. Constantine then goes to the Northern District of California, and let's say that the court out there agrees with his argument and says, yes, in 3, 4, and 5, we did say that if you're covered by the Agent Orange Act, consent decree, Mr. Constantine, the only path that he has back, because the Northern District of California cannot grant disability benefits, the VA, the court does not have that jurisdiction to order the VA to pay Mr. Constantine benefits that I'm aware of. They only have the authority to adjudicate the scope of that decree under a motion to enforce. And so that would leave Mr. Constantine in a position of having to take that decree, go back to the VA at the claims level, if it's been dismissed, wait 3 to 5 years for the claim to be adjudicated, wait 5 to 8 years for the appeal to be adjudicated, wait another 1 to 2 years for the Veterans Court to decide it, and hopefully that would resolve it. But by that time, Mr. Constantine will either pass away or be probably well into his hundreds. And that's is that a stay, should Mr. Constantine prevail at the Northern District of California, a stay enables him to come back to the Veterans Court and have them direct the BVA to re-adjudicate that, thus shaving decades off of the time. And that's the real concern we have, is that while we do maintain that issue preclusion clearly applies, if I'm wrong and Mr. Constantine is wrong about that, then a stay is the most fair, most reasonable, most equitable remedy to allow him the opportunity. Quite frankly, we think that the VA should be the one to have to go in and adjudicate that since they're the ones that are claiming it does not say that. But regardless, we didn't plead that, we didn't argue that in the case. The stay allows him to come back and get the relief he needs more expeditiously without having to go through a Byzantine process while he's, quite honestly, in the last days, weeks, years of his life. Is there any other prejudice? I understand your answer, but is there anything else? Like, is there any impact, for example, on attorney fees or anything else? I haven't thought about attorney's fees. That's just generally not something that I worry a whole lot about in cases like these. So off the cuff, in terms of prejudice regarding fees, I think that there might be, because I don't know what the requirements for fees, I don't know that my firm would be the one to go into Northern District of California. I don't know that we'd have a standing to seek fees there. This is the difference between assuming that you're going to have to go to California. If we were to say, is your preclusion doesn't apply, looking at the difference between a stay and a leave, or a stay versus dismissal, what prejudice there would be? I think there would be a prejudice in terms of recovering fees because there would not be any vehicle, since the appeal before the Veterans Court would have been dismissed, and I'm not aware of any vehicle that we could take a victory from the Northern District of California into the Veterans Court to seek, years after the fact, each of these for our work under law. In other words, if the case, if you had to go back to the agency from the beginning, there might not be a nod that's filed that would then trigger attorney fees. That is correct, Your Honor. If in fact he was to go back, I would hope that if we were to prevail at the Northern District of California, that a claim would be expeditiously granted by the VA, but then again under the AMA, it would be an initial claim at that point. I think the correct language may be an original claim. I can't remember what the regs actually say off the top of my head, but it would not entitle us to fees in that matter, and that certainly would be a prejudice that applies. The other one I would... Do you have a 20% fee agreement with Mr. Constantine, if you can say? I believe we do, Your Honor, and I can verify that and share that with the court after argument, but I believe we have a contingency fee agreement for any claims, for this particular claim, granted below from the BVA and below, and then we also have a right to seek on Mr. Constantine's behalf any fees under the Equal Access to Justice Act for his work on the court appeal. Counselor, in your view, did the Veterans Court make a decision, issue a decision with respect to issue preclusion? I believe they used those exact words, and I should have highlighted that in my notes here, but I believe that they specifically state that it's not, or at least in less than precise words, stated that there is no issue preclusion because it hasn't been adjudicated. They do not see that it has been, in fact, mentioned in there without any real... If we're interested in the issue, should we send this matter back to the Veterans Court to make a decision on issue preclusion before we can get to it? I can't speak to what's best for the court, Your Honor. I would think that that would be an economic way to do that is to ask the Veterans Court to weigh in on issue preclusion, but I think this court also has the authority to decide that. I ask that because I'm not sure that the Veterans Court reached a final decision with respect to issue preclusion. It's a confusing decision to me, Your Honor, and that's why I'm being somewhat circumspect about it. Are we compelled to remand and eliminate this confusion? And in that process, maybe have the question of a stay or dismissal addressed? I don't know that the court is compelled to do that, Your Honor, but there's nothing that I'm aware of that prevents the court from sending it back to do that, and in fact, that would be quite possibly helpful to be able to... But you would agree that if the Veterans Court did not reach the question on issue preclusion, then we can't either. Our jurisdiction in Veterans cases is limited to the decision that's made by the board, and when we review the judgment of the Veterans Court, if the Veterans Court did not reach a decision on issue preclusion, then I question whether we have jurisdiction to address that issue, and perhaps it would be better to send it back, have the Veterans Court address it, and with instruction at that point, to make this decision with respect to a stay or dismissal. Mr. Constantine certainly would not disagree with that relief. Can I ask you another question, though, going back to... I think you were hinting at that maybe you thought that the Veterans Court had, in fact, addressed part of the issue, and I was wondering if the language you were wondering about was at A13, where it says the court rejects Mr. Constantine's argument that the scope of the NAMER class as it relates to decree and DMC has already been litigated and resolved in a manner that weighs in his favor. Is that what you were thinking of? So, is this what you're relying on to say that you think that it was already decided by the Veterans Court? Okay. Thank you. Isn't that dicta when the Veterans Court made that statement? It seems more like an off-the-cuff statement that, well, if we were to this particular issue, we would find that we would reach a decision that's not in your favor, but they never did reach a decision. Your Honor, Mr. Constantine is in a difficult position because I think what my concern is, or his concern would be, is arguing which court should adjudicate the issue. And from Mr. Constantine's perspective, he just wants it adjudicated because he feels like it is a very clear and undisputed basis for issue preclusion. But if the court was to remand it, he would not object to that because I think that an argument could be made that it is, in fact, dicta. I think an argument could be made that that's also a clear rejection of his attempt to have the scope of the class that's applied in the NAMER consent decree applied to him. And so it is right for this court to review this. So I think both ways are valid ways of looking at it. And Mr. Constantine seeks the way that's going to give him the clearest result and the quickest result, which might be for this court to decide it, but it could also be with a clear instruction from this court up to the Veterans Court to decide that, and they could decide it differently with a clear instruction from this court. I see that I missed my rebuttal time. We're into rebuttal time, but I'm going to restore your five minutes at the end of this, so we can flesh this out completely. So let's hear from the government now. Thank you, Your Honor. May it please the court. This court should affirm the decision of the Veterans Court. I'd like to start just by addressing some of the issues that this court had asked Mr. Adig about. We do agree with what Judge Stoll... What decision of the Veterans Court should we affirm? The abstention? We do agree. We do think that this court should affirm the decision of the Veterans Court to decline to exercise jurisdiction, but to the extent the court decides the issue of issue preclusion or collateral estoppel, as we refer to it in our briefs, we do believe that, as Judge Stoll said, there is no issue of preclusion in this case. It admittedly did so in the context of deciding to... Do you agree with the statement I made all ago that the statement you were referring to was dipped? I mean, it was just off the cuff, and I don't see... Do you have a decision, a final decision, with respect to issue preclusion from the Veterans Court? I wouldn't say it was off the cuff. The court does say more fundamentally before it makes that statement, so we do think the court... Well, I thought the point you made in your brief, which I think seemed right to me, was that as part of the rationale for the Veterans Court saying it was not going to go ahead and decide on the proper scope of the consent decree, it said, first, we don't think that that issue has already been decided. Obviously, there would be nothing for us to decide about the scope if it's already been decided. So it had to say we reject Mr. Constantine's argument that it's already been decided. That's what leaves us a big issue that we don't think we're the proper people to decide, which, as I mentioned before, Mr. Constantine in his brief to the Veterans Court said, we agree with that. Yes, I agree with what Your Honor just said, and I agree, and I think Mr. Adig just acknowledged again that Mr. Constantine states, as the Veterans Court said at APPX-7, that the function is reserved for the district court to interpret the class certification order or consent decree. So we do think that this court could the Veterans Court's decision on issue preclusion and also in its declination to exercise jurisdiction. So show me on the record, show me where the Veterans Court may reach the final decision as to issue preclusion. Well, I think as Judge Toronto just said, the court had to reach the issue. As it said, fundamentally, the court rejects Mr. Constantine's argument that the scope of the NEMR class, as it relates to the Korean DMZ, has already been litigated and resolved in a manner that weighs in his favor. You know, as Judge Toronto just stated, assuming I'm quoting him correctly, the court had to make that finding in order to find that the issue was still live and therefore it should not decide to interpret the class certification and consent order and rather that that issue was... If that's true, and the court made a decision on it, decided the issue of preclusion, then why did it abstain? What is it that it refused to exercise its jurisdiction over? Well, so our understanding is that the court rejected Mr. Constantine's argument regarding issue preclusion and then it declined to exercise jurisdiction to decide whether the scope of the NEMR class was still there. Well, we think that, as the court stated, it is fundamental to its decision that it had to find that there was no issue preclusion because if it found... If it didn't make a finding on issue preclusion or if it found that issue preclusion did exist, then there would be nothing to decline to exercise jurisdiction over. And so we think that the issue of issue... That the issue preclusion statement that the court made, that the Veterans Court made at APPX 13 was, as it says, fundamental to its overall decision. So we do think that this court could affirm and would not have to remand to the Veterans Court to make a more definitive statement regarding issue preclusion. Can I ask you about the, I don't know, small but not unimportant second argument Mr. Constantine makes, which is that if we don't disagree with what the Veterans Court said about how it had actually not already been decided in NDCAL and therefore that has to be decided in NDCAL, he says it was improper to dismiss the appeal rather than stay it. And at least the only thing that I'm particularly interested in on that is, is there a practical difference in his ability to get every penny that he would be entitled to if he wins in NDCAL on the scope of the consent decree, depending on whether this appeal is state... Not this appeal. The appeal from the BVA to the Veterans Court is state or dismissed. I think practically speaking, to the extent that there's an advantage in one versus the other, it would actually be to not stay and go to the Northern District of California. That's because if the case goes to the Northern District of California and the court makes a finding that Mr. Constantine is part of the NEMAR class, then VA has an obligation to automatically re-adjudicate. We submit that Mr. Adig is incorrect when he states that he would have to go through the entire claims process. That's not what would happen. As we completely acknowledged in our brief, the NEMAR consent decree requires VA to promptly re-adjudicate all claims that are found to be covered by the consent decree. We made that statement in our brief, and the NEMAR court has also made that statement in several of its NEMAR holdings subsequent to the consent decree. Procedurally, what would happen? What piece of paper does he file? He doesn't file a new claim? My understanding is, yes, he wouldn't have to file a new claim at all. The NEMAR court would issue that decision, and I think at least absent any appeals or whatnot, VA would automatically re-adjudicate that claim in conjunction with that court's decision and the consent decree. I mean, Mr. Constantine simply wouldn't have to do anything in that respect. There would be no point to a stay in this case, and again, as we mentioned in our brief- And would anything about the effective date of the award change? The alternative is that this appeal sits in the Veterans Court, and once he gets his, by assumption, favorable ruling in NDCal, he files it with the Veterans Court, and I think he suggested, well, the Veterans Court would then have to send it back to the BVA, which would be able to adjudicate it. I mean, and I think what I was hearing was he's going to get to a final result faster that way than if it starts in the regional office. We don't think that that's true, because if, hypothetically, the Veterans Court had stayed and it went to the Northern District of California, and again, hypothetically, that the Northern District decided in its favor, then I think what would happen is then it would have to go back to the Veterans Court since the Veterans Court would have stayed, and then the Veterans Court would have had to remand back to the board to make a finding in accordance with what the Nemer Court had found, but without the stay, and as the situation currently is, if Mr. Constantine goes to the District Court and a finding is made in its favor, then VA would just automatically re-adjudicate that claim in accordance with that consent decree. There would not have to be any additional steps for Mr. Constantine to take, and there shouldn't be any delay in that. What would be the enforcement mechanism on your asserted automatic adjudication? Maybe the VA says, we will do it, and we'll tell you when we do it, and three years later, the VA automatically re-adjudicates it. I'm not sure about a specific enforcement mechanism as opposed to the All Writs Act, but again, that would apply even if it went back through the route that Mr. Constantine would prefer. I think in both of those cases, the recourse would be the AWA, but my understanding is that when the Nemer Court has made decisions affecting the Nemer class, the VA has promptly adjudicated them. I'm not at least aware of the Nemer plaintiffs having filed any sort of petition or anything to make that re-adjudication happen faster. I apologize, that's not correct, but that is my understanding, but I think- Can I just ask? Hypothetically, if there was a stay of the current BVA appeal to the Veterans Court, would the existence of that stay interfere with VA's proceeding to an automatic adjudication on the assumption that Mr. Constantine prevails before NDCal? I think it could. We didn't mention this in our brief, but in preparing for argument, we did look into that issue a little bit, and I don't think this court has made a decision on that point, but there is a Veterans Court decision that I think is precedential in which that court stated that when a case is live with the Veterans Court from a final board decision, the board is no longer with jurisdiction to take further action on the case, and I think that would apply to whatever VA entity is making that decision. I think while the Veterans Court retains jurisdiction, so that means if the stay happened and the case wasn't dismissed, then Mr. Constantine would have to wait for that Veterans case to close back up again before VA could take any such action, and I can provide the citation for that. The case is Cirulo, and the citation is 1 Vet App 195, so we do think that there is potentially a procedural issue with a stay as well, and then finally, we would like to make the point that our understanding is that Mr. Constantine did not even request a stay in front of the Veterans Court, so it would be hard to say that the Veterans Court erred in not granting a stay that we don't think Mr. Constantine even asked for. Can I ask you one question? This is the same attorney fees question. I take it that because you're saying it would be on the same claim, a new claim wouldn't have to be filed, there would be no difference in how attorney fees were treated with respect to whether the case was remanded, I mean, was stayed or dismissed. I apologize. I'm not actually very familiar with attorney's fees, so I don't know how that would proceed as far as that issue. If the case were stayed versus dismissed, then the automatic re-adjudication happened. I can certainly look into it further if Your Honor wants further answer on us from that. Are you aware of whether there's a related action that's been filed in the Northern District of California? I don't believe that there is. Stay in what? I mean, normally you have a stay when there's a proceeding elsewhere, and you allow that proceeding to go forward, but here there's no other proceeding, correct? That is correct, and that would be another reason why there would be no reason to stay, but I think what Mr. Constantine thinks should happen is that there should be a stay while he, or I think he maybe thinks that VA should, but while a petition for enforcement is sought at the Northern District, but so far there has been no such petition or motion to enforce filed at the District Court, which I think Mr. Constantine could have at any point during this filed such a motion for enforcement, but we don't think he has yet. And just to be clear, there's no argument that Mr. Constantine is requesting a... That's okay, I'll go somewhere else. Okay, thank you. I'm happy to answer any other questions that this Court might have. To the extent it does not, we respectfully request that this Court affirm the Veterans Court's decision. Let me ask this final question. Is it the case that Mr. Constantine is not seeking a ruling from us as to the scope of the consent decree? That is my impression. I believe Mr. Adig agreed with Judge Toronto that the two things he is seeking is a finding that the Veterans Court erred in not finding issue preclusion and that it erred in not staying the case, so we don't think that Mr. Constantine is asking. But Mr. Constantine is telling us, we don't want you to make a scope ruling. We agree that Mr. Constantine is not asking this Court to make a decision on the actual scope of the numeric class. What's your view on whether this Court should address the issue preclusion question? I think that this Court could affirm simply on the grounds that the Veterans Court did not abuse its discretion in declining to jurisdiction, but I think to the extent that this Court addresses the merits of issue preclusion, we clearly think that there is no issue preclusion because there was never any cause for the Northern District or the parties to consider whether Veterans serving outside the Republic of Vietnam were part of the NMER class. To the extent that it was decided at all, we strongly believe it was decided the other way, that the class should be limited to only non-Veterans. Would you agree that the jurisprudence surrounding the doctrine of abstention applies when there's two court proceedings addressing the same issue or having the same parties? I think that that is certainly the traditional situation in which it applies. I mean, it usually applies. And that's what the Court said here when it came up with intersecting jurisdiction, right? Yes, and we don't dispute that. But would you say that there is no other? I mean, you're just telling us there is no other court or agency or any other procedure that's addressing this issue here. We are not aware of any other situation that is similar to this one. So when the Veterans Court abstains to exercise its jurisdiction, it left the matter just hanging in the air. We don't agree with that. The matter wasn't just hanging in the air because, well, number one, the Veterans Court still followed the guiding principles that the Supreme Court articulated in Colorado River. And number two, Mr. Constantine still has that ability if he wants a decision on the scope of the class and the scope of the consent decree to go to the Northern District and file a motion for enforcement there. And then he can get that answer from the Northern District as to the scope of that class certification order and consent decree, which is, of course, something that the Northern District... But the fact that there's no concurrence of jurisdiction where you don't have two courts, whether it be state or federal, that are hearing the same issue... Well, we think that... We agree that there is no live case in the Northern District. There is no live dispute about this specific matter under that extremely live, long-oofed case. Yes, I misspoken. I agree with Your Honor. The case is live in as much as... And that was the point I was going to make. In as much as the District Court retains jurisdiction without deadline, as far as we're aware, to enforce the terms of that consent decree. And as the consent decree like that, it should not be for another court to interfere with how the court entering the consent decree interprets the terms of that decree. Thank you, Your Honor. Okay, thank you very much. Oh, sorry. We just wanted to know if the court wanted a written response on our position on attorneys. That's okay. Thank you. The concern that I have, Your Honor, is in terms of this process that the Secretary has outlined by which claims are automatically re-adjudicated. And anecdotally, I mentioned this in my brief, I've been doing this for 17 years and I've never seen the VA automatically adjudicate anything. Their own behavior in the Blue Water Navy case can kind of influence it a little bit here, is that even after the Northern District of California found that the Blue Water Navy vets were part of the class, the NEMR class, the VA continued to sign effective dates based on the Asian Orange Act modification. I think it was 2020 or 2019. And was not, to my knowledge, applying to the NEMR. And I think that that has been, if not currently being loaded in, I know that we have several cases or work cases where that is going on, where the veterans are continuing to fight for an earlier effective date under the NEMR consent decree, despite the fact that it's already been said by that court that they're entitled to those protections. Can I ask you a question, which is, once you see that you've got the veterans court saying that the district court did not resolve the question at issue, I want to know why didn't you go to California then? I just, I'm curious about that because it seems to me that that might have been, if the interest is saving time, going and having concurrent litigation, I don't understand why you wouldn't go then. The quickest path there, it's a fair question. Mr. Constantine, the practical aspects of finding counsel in California that's willing to take on that kind of litigation is a factor. But then the other factor is that, excuse me, a motorcycle passed by, I apologize, your honor. In our view, your honor, without disclosing our full legal strategy, our view is that issue preclusion is clear. And NEMR 3, 4, and 5, the Northern District of California has made clear that if the Agent Orange Act covers a veteran, so does the NEMR consent decree. And Congress amended the Agent Orange Act in 2019 to include Mr. Constantine. So it's hard to understand how this issue is even open. And it was our position, Mr. Constantine, in extensive discussions with other counsel outside of this firm, that it simply made sense to come to this court to ask for an adjudication of this issue of issue preclusion because it is so clearly resolved. It seemed like that would be the fastest path. We even waived the oral argument initially to allow the court to make that decision. And we thought that it would be a much faster path. And certainly, that's basically our position there. And quite frankly, the financial costs of finding an attorney to go into Northern California, Northern District of California, are incredibly burdensome for a 78-year-old veteran who's struggling to make ends meet as it is. It simply seemed like this was the faster and more logical approach to ask the court to make this clear finding that issue preclusion does lie, or as the court has indicated, to remand to the Veterans Court to make that determination as to whether or not issue preclusion applies in this particular case based on NEMR 3, 4, and 5 at a minimum and the NEMR consent decree. We also asked that the court disagrees and finds that issue preclusion does not lie, or that the Veterans Court need not consider that for whichever reason, that the court find that it was improper to simply dismiss the case and vacate the court's remedy in order to stay the matter while Mr. Constantine has an opportunity to find counsel who has pockets deep enough to take this action on. Unless there's further questions, we would rest on our briefs arguments in those briefs as well as before the court. Counselor, I think that we've heard the arguments and we've heard the arguments of all the parties this morning and this court now rises in recess.